Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good afternoon. Thank you for appearing here. We're sorry it's taken so long for us to schedule oral argument and we appreciate your willingness to participate with us in this unnatural setting. We will have the oral argument but a couple of particular notes. Please mute your cell phones or any other device that might ring during the during the presentations and also we we're not allowing video or photos or recordings of this argument. Justice would be the rule in New Orleans. Your faces both look good. I don't need to comment about any of that. We are making one accommodation. We'll give you each five minutes uninterrupted at the beginning of your presentation should you choose to avail yourself of it because you know there is some gap in our audio of course and with that we'll we and finally we appreciate any record citations you may have. We'll call this case for the record. It's number 19-10785. Walsh v. Hodge and Ms. Pettit will address this for Ms. Hodge. Thank you Judge Jones and may it please the court. Lenora Pettit for appellants. Dr. Clay Walsh has admitted to engaging in inappropriate sexual conduct with a student while serving as a non-tenured professor at the University of North Texas. He nonetheless maintains that the university could not fire him because it did not call that student as a witness in his disciplinary proceeding. This case should have been dismissed on the grounds of qualified immunity because the constitution does not clearly impose such a requirement and it certainly did not do so in 2015 when the university terminated Dr. Walsh's employment. What is clearly established is that while the constitution provides a number of specific procedural protections to defendants facing criminal prosecution, the due process clause entitles an individual facing deprivation of a constitutionally protected interest only to a notice of the grounds of the government's decision and an opportunity to respond that is, and I'm quoting from Matthews here, tailored to the decision to be made. This court has said that when that decision involves the discipline of a university professor, he is entitled to four general rights. The right to the notice of the charges against him, of the evidence to be considered, an opportunity to respond to that evidence and a jury effectively of his academic peers. Now Walsh got all of that. What he is, in fact, in front of this court, he is complaining only about that third element, whether he was able to have a meaningful opportunity to respond to the evidence offered against him. He got that too. He was able to make opening and closing statements, offer documentary evidence, call any witness he asked for and cross-examine every witness the university called. That satisfies cases like Goss and Loudermill and Levitt and Dixon. So that's the end of this case. Whether, but whether Walsh is entitled to yet more, it requires this court to look at the specific additional procedural protections for which that Walsh is requesting. That's, and you apply the three-part test in Matthews. That's a bit tricky in this case because the protection that Walsh is requesting has been something of a moving target. In the district court, he asked for direct cross-examination and confrontation of the complaining student. Here, he is seeking simply a declaration under penalty of perjury. Regardless, he cannot point to a single case before 2015 that entitles him to either such remedy and under the qualified immunity jurisprudence, including the Baldwin case I mentioned in my letter, that is fatal. In fact, to the opposite. The same thing happens from Flack and the Eighth Circuit and Timkovich in the 10th. The first case holding anything similar to what Walsh requested to be necessary under the due process clause was two years after his disciplinary proceeding. And that simply isn't good enough. Now, Walsh in response points to Goldberg, but Goldberg isn't good enough either because it is not factually analogous. It involved subsistence welfare and the due process necessary for individuals who are frequently illiterate. The Supreme Court has since limited it to its facts, and those facts do not apply here. Instead, if you look to case, you have to fly the three-part test in Matthews, which requires you to look at the private interests at stake, the public interests in the procedures requested, or sorry, procedures existing, and the likelihood that the additional procedure will, and I quote, decrease the, sorry, apologize, that the likelihood that the additional procedures will reduce the chance of an erroneous deprivation. Those all favor the contract was to expire in August. He was fired in April. So we're talking about four months of salary. That's a relatively small interest. University's interest by contrast is extremely large. It has multiple interests, including the simple interest of staying a university and not a court system, but also to protect the needs of potentially vulnerable witnesses and to comply with the requirements of Title IX. And so we're looking purely at the likelihood that the additional procedure will reduce the outcome of a, sorry, of a wrongful outcome. That's very minimal here too, because as I mentioned at the outset, Walsh admitted to engaging in inappropriate sexual conduct. The only question was the appropriate sanction, and he has not brought forth any sufficient allegations from qualified immunity that the particular student needed to be cross-examined in order to prevent a wrongful sanction. And I point this court to the HIDAT case to look at the more general question of whether cross-examination in this context is appropriate. What case is the last one you just mentioned? HIDAT. H-A-I-D-A. The First Circuit. But they did say that confrontation had a good value, didn't they? In the criminal context, Your Honor. But in a university context, they went through a great deal of close analysis to determine that without the benefit of a judge or attorneys, there's no evidence and no reason to likely to lead to a less, to a more correct outcome because cross-examination, when not properly used, often leads to confusion and to harassment and not to a greater learning of the truth. Counsel, what evidence was there that would corroborate the complainant in this case? As I understand it, and I could be wrong, but it sounds like it's basically a credibility battle between the complainant and Dr. Walsh. And on top of that, even the witnesses, according to the Kaiser report, seem to be split. Is there anything other than the split witness testimony that would be corroborative of the complainant in this case? Your Honor, I would like to push back a little on whether there's a split witness and what the question before the panel was. Professor Walsh himself admitted to engaging in inappropriate conduct. The only question then is sanction. He admitted to, for example, holding her hand and touching her back and touching her butt. He said that she sat down on it, but he did not move his hand for up to 30 seconds. Now I point you to ROA 1998 for that particular citation. So his own words corroborate the complaining witness's testimony. Now there was a dispute about whether it was consensual, but the university's policies prohibit both unwanted and consensual conduct in this context between a university professor and a university student. And it was the university's position, as explained by Dr. Peska, that consent was not a defense in this situation because the student couldn't consent. Well, excuse me, but this is not a Title IX case, is it? No, Your Honor. This is a process case. Correct, but you mentioned Title IX as the great interest of the university, but what happened here in no way measured up to the standard of severe, objectively offensive, unwanted sexual conduct, did it? Your Honor, it was not a Title IX case, and Professor Walsh has confirmed he's not guilty. All right, exactly, but there were two, and I'm sorry I don't have the language here, there were two different policies. One of them seemed to be more of a Title IX, if I recall correctly, and the other one is the one he was fired under, which basically said anything that we think isn't a good idea is sexual harassment. No, Your Honor. Pardon me? No, Your Honor. He was fired under policy number 5.205, which prohibited both an unwanted sexual conduct and consensual sexual conduct between superior and a student, so that's the same policy, and when I mentioned Title IX earlier, I'm sorry if I was unclear, what I was going through was the university's interest as seen through the due process clause, and there are several, including protecting students from inappropriate conduct from their, from superiors such as professors, there are protecting witnesses, there are complying with Title IX regulations, and there is the need to have efficient administration of a university context. That's the only reason I mentioned Title IX. Okay, and then the university, we'll get back to Judge Engelhardt's question about the disputes and the evidence, but you disregard this fellow's interest as being limited to four months of salary, when we all know, with a great deal of familiarity with this area, that this is arguably a career-ending type of discipline. I don't see how the university can contend otherwise. Your Honor, he is, I believe what you're referring to is known as a stigma-plus claim for liberty interest in his reputation. I'm not talking about stigma, I'm talking about a, as a practical matter. I am not talking, now, it is true he didn't plead stigma-plus, and that doesn't matter. It weighs into the calculus of what processes do. Your Honor, he has pled this one specific, his claim is based on his termination from the university. He hasn't alleged that the university has done anything to make this, to interfere with his additional ability to apply to other employment, that which, and it actually contrasts significantly with the student-based discipline that you see in a lot of the cases like the Baum and the University of Cincinnati case, because the student has a disciplinary file that will go with him with every single university he ever applies to, and so there is an additional level of, even if it's not stigma-plus, it is an additional interest in not having his disciplinary record harmed in this way. Walsh has not alleged, and I am not aware of anything remotely similar, so all that's happened here is that the Well, he found that he had an inappropriate relationship. You don't think that will follow him when he applies for a job? He will be able to explain to any potential next employer, as he explained to the university here, that the conduct was mutual flirtation, was his term, and if the next employer... You're talking about his ability to explain, as I understand the Kaiser report, what the investigator did was to gather information. Did he solicit any information or a statement or any other evidence from Dr. Walsh in this case? Did Ms. Kaiser? Yes, your honor. Ms. Kaiser did speak to Dr. Walsh, and Dr. Walsh was of the opinion that she offered, that she took down a one-sided report, but he was able to explore that in great detail at the hearing. That is the basis of this lawsuit, which is what the due process clause requires, is that he was under the Wells case. He is entitled to an opportunity to respond to that evidence, and he was given an opportunity to respond to that evidence and to examine and to look at any bias by Ms. Kaiser, any evidence that he had that this was mutual, any evidence that he thought that he had that this was a one-time occurrence. But from a certain standpoint, it doesn't matter simply that he's able to respond. If the essence of this case is he said, she said, and in fact, the female professor is on Walsh's side of the case, as I understood it. That's your honor. And he was, excuse me, just let me finish. I'll be brief. It doesn't matter what he, quote, responded to in theory, because it's not, it's on the briefs. It's very difficult to judge credibility. The question is whether he was able to persuade the university panel, and had she been there, and had the photos been introduced, they would have been in the proper position to evaluate comparative credibility, because they obviously didn't believe his explanations. They did believe what Ms. Kaiser said she said. Your honor, he was able to call both, the witness list indicates he was able to call both other professors that were at the event. And so he was able to bring them forth and say, this student is not credible. And in a civil case, actually, there's generally speaking a presumption that a missing witness isn't credible. And so the university, when they did not call this woman, ran the risk that the panel would find that she was not credible simply because she was not there. Now, that wasn't in your brief. Yes, your honor, it was. It was in our reply brief. The missing witness here was student number one. And if you're the fact finder and you've got a way to make a determination of credibility between the accuser and the accused, how do you do that when you don't even hear from the accuser? Your honor, I see that I'm out of time. May I respond to Judge Davis's question? The answer is, your honor, that they had the evidence that from Ms. Kaiser, and Dr. Walsh was able to attack the credibility as much as he wanted. He was not able to cross examine her, but he had other means of attacking the credibility of this witness, which is what Wells entitled him to. And this court actually isn't being asked to determine whether they were right or wrong, simply whether he had a fair chance to respond. And he did for the reasons that we explained in our brief and in the Wells case. Okay, you have a chance time for rebuttal. We'll hear from Ms. Heath. Oh, you're muted. Unmute. You're muted. Thank you, your honor. Judy for Dr. Ralph Clay Walsh. The questions that have already been posed point to the heart of the argument that I want to make this morning. And that is Dr. Walsh was faced with defending himself in an alleged violation of a sexual harassment policy that defined harassment as unwanted conduct without the ability in any form or fashion to bring into question the conduct of the student in question who had accused him. He makes three arguments. So let me back up and say, it's without question, he has a protected interest in his employment. As far back as Loudermilk, it's clear that an individual who's got a due process right, who's got a protected right in his employment, that is a significant interest that the courts pay significant attention to and typically grant more significant due process rights to make sure that that protection, that that interest is protected. Dr. Walsh has alleged that the committee failed to protect his due process rights in three primary ways, all of which deprived him of a meaningful opportunity to be heard in this sexual harassment case. The first was the witness against him. The one person who accused him did not appear before the panel. She did not appear live. She did not by a sworn statement. She did not appear by a recording. She did not appear anyway before the committee and the committee had no ability to cross-examine her, neither did Dr. Walsh. That's the first due process violation we contend. Secondly, we contend it was completely erroneous for the committee chair to refuse to allow any inquiry into the conduct of the student in was not relevant and that it was not under investigation. Finally, in an effort to try to get past those due process deprivations, Dr. Walsh attempted to introduce photos of the evening in question, photos that went almost to the end of the evening that show the student standing, not only standing next to him, but leaning into him and casually touching him that established far more than him saying she was comfortable, established what she looked like at the time. So our contention is those three things, all of those things contributed to his inability to have a meaningful hearing on this alleged violation of the sexual harassment policy. Now, the defendants contend that Supreme Court precedent does not require an opportunity for Dr. Walsh to cross-examine the students complaining against him in this case. And to be clear, the district court did not find that Dr. Walsh had an absolute right to confront this witness. The court did find, citing Wells v. DISD, that he had the right to either cross-examine or have some reasonable substitute for the right to cross-examine. And the court concluded that allowing cross-examination of the investigator who only had hearsay information of the night in question, and in fact showed some bias toward Dr. Walsh, that that was not an effective substitute for the ability to cross-examine the student. The defendants also point to the Matthews v. Eldridge balancing test, a test that I also think favors some further implementation of a protection against this student not appearing at the hearing. The interest, I'm going to say the interest of Dr. Walsh and the interest of the defendants are relatively equal. Certainly, Dr. Walsh has a significant interest in his employment. I understand that the university has an interest in its procedures. Leaving the issue that's of most significance, what's the benefit of additional procedures that could have been implemented? And did what they, did what the defendants do, did it lead to a likely erroneous result? And of course it did. They only, they'd never heard from the complaining student. They were not able to ask her a single question. Something as simple as Dr. Walsh said, she started it. She held my hand. That's not in the report. That's not something that she was there that the panel could have asked her about. And again, I think that Wells is clear that she should have been there and she should have been cross-examined. But even if you don't think that Wells holds that, there were any number of ways that the panel could have come up with substitutes that might have worked. Ms. Heath, Wells is not a sex harassment case, right? It is not, but it is an administrative proceeding with an employee who had a due process right. Well, we don't really, we do not have a case in this circuit that denies confrontation in a case where personal credibility was the fundamental issue, do we? We do not yet. In fact, the Sixth Circuit, and I think, I thought that the Hyde Act case also proved confrontation in certain, but the Sixth Circuit has made very plain for several years that confrontation is required, hasn't it? Yes, the Sixth Circuit is clear and I think you're right about Hyde Act. Hyde Act says essentially that due process in university proceedings requires some opportunity for real-time cross-examination, though it doesn't have to come from the accused. It can come from the panel, it can come from somebody else, but they clearly say it requires real-time cross-examination. Now, Ms. Pettit says that you are unclear, you're, you are unclear about whether exactly how much confrontation your client required, whether it would, that right would have been satisfied by putting the alleged victim to a declaration under perjury or whether she had to appear in person to be examined. Do you take a position on that? Yes, we have always said he had the right to, to, to make, to cross-examine her. I merely offered the possibility of a sworn statement as some evidence of what they could have done along the Matthews balancing test that, but, but I completely agree that Wells said he had a right to cross-examine her and I, I think that the whole, the problem with the process was the school's desire to completely mask the student's identity, to never identify her and to allow her to essentially make these allegations, you know, behind a curtain and that's just not fair. Well, in Haiti, a member of the panel actually questioned the accused accuser, did you know? I'm sorry, Judge, which case? Haiti, the first case. Yes. A member of the panel questioned the, the accuser. Yes, that's right, that's right. And, and the, the, the accuser was in the room with the accused while that questioning took place? Yes, I think the, I'm not sure I can think of a case except cases where... No, in Haiti though, in Haiti weren't, weren't the accuser in the room where the hearing was being held? Again, I was about to say, I think in almost all of the cases cited, except for cases where someone simply, where an accused just didn't appear, that, that both of the parties were present in almost all of the hearings. Let me ask you a question about the photographs in particular. As I recall, correct me if I'm wrong, you sought to introduce the photographs in globo or individually as, as Dr. Walsh was responding? Well, the process was, you know, prior to the hearing, Dr. Walsh had to present his list of witnesses and his list of exhibits. And at that time, the entirety of the photographs, the ones that are in our record here, those were listed as an exhibit or exhibits? They were exhibits to the summary judgment record, but they were not admitted in the hearing. Okay. So, in any event, well, let me ask you, maybe I'll put a finer point on it. Was there any explanation offered with regard to each photograph as to its significance, or was it for just the general proposition that this was a consensual, that everybody was having a good time and that this isn't what it would appear to be once the complaint was filed? If I'm, if I'm following you, but I think initially he simply proffered the pictures with his statement of exhibits, or these are the exhibits I would like to use. There was some conversation or some communication with defendant Warts about whether they would be allowed. Defendant Warts said, no, that would, that would show the identity of the student. Dr. Walsh tried to respond to that by, you know, x-ing out the eyes of the student. Dr., or Professor Warts said, that's not good enough. The pictures are not relevant. What was her decision? Okay. So, I guess my, you're answering my question, and counsel will have an opportunity to respond, but going back to something Judge Jones mentioned earlier, the photographs were never evaluated as to their merit on a timeline of the evening. In other words, that some of them might well have been of no consequence whatsoever, and others may have been probative or supportive, or to refute any of the testimony from the witnesses that Kaiser interviewed. Is that correct? That's correct. So, the panel did not have an opportunity to make a determination one way or the other. I mean, we don't know from the record when the photographs were taken during the evening, do we? You can from the record that there's a time stamp on the photos. Oh, a time stamp. You don't know what was happening at those various times, what time the food was served, what time they left and went to the bar, so forth. There is, there is testimony in record that establishes that. I don't have the record site with me. It's in Dr. Walsh's affidavit. I can say that the last photo of the evening, I believe it was 10 30, was about 30 minutes before everything ended. So, again, you know, our point was, you know, look, you are asking Dr. Walsh to defend against an allegation that he committed unwanted sexual, you know, activity with this student, and his attempt to introduce these pictures to show that, at least from the pictures, she, it was about the furthest that she could look from feeling like she wanted to be away from Dr. Walsh's picture so that she appeared to be quite comfortable with him. But again, that simply would have been yet one more way for Dr. Walsh to be able to establish his defense. And, I haven't mentioned, but I do think it's, it's important that in the hearing procedures, the burden of proof was on the university, clearly. It says so, Dr. Gortz stated it in the hearing that it was their burden to prove that by a preponderance of the evidence that it violated the policy. And certainly, I think that, you know, that's another basis for a due process contention is that they did not prove their case. The only thing that they used to prove the violation was the hearsay testimony of the investigator. Don't you agree that if Mr. Walsh had been permitted to personally cross-examine the student, that that would have likely turned into a acrimonious shouting match or something of that sort? I'm not sure. He's a fairly soft spoken person. I think he could have handled it. But, but your, your question raises a good point. And that is cross-examination did not have to occur through Dr. Walsh. As you pointed out, it could have happened through the panel. It could have occurred through Dr. Walsh's representative, another member of the faculty. So there was not it was not necessary that that head-to-head confrontation occur. It could have, but cross-examination still have occurred. Well, wouldn't that be a preferred process rather than have an untrained person like Dr. Walsh try to, who's personally involved in the situation, not to personally cross-examine the student? Yeah, I'm not sure that I would make a, you know, across the board comment about what I, what I think is best. But I, I do think that what you were saying that the, the cross-examination problem that were pointed out, that we are pointing, pointing out could have been addressed in a less, in a context that would be less likely to result in the kind of fireworks that I think you're, you're suggesting. Is it part of your cause of action that you have to approve, prove that the result of the proceeding would have been different if he had gotten all of these protections? No, no, we're simply alleging that is, is protected constitutional right to a meaningful fair hearing. And that's what the epiphysis says, right? That's right. That's right. And ultimately the question of whether a hearing is fair to you, is it, was it designed to come to the right results? And in this case, there's just no possible way that you could come to a fair, I mean, maybe you might come to it on happenstance, but you're not going to come to it by fully examining the facts, because the panel just didn't have the facts. Do you think that in all of these cases, confrontation is legally required, or do you think it's a case-by-case due process decision? I do think that Wells says that an accused has a right to confront the witness against him, or a reasonable substitute, therefore. So considering Wells, I would say no, it's actual cross-examination is not required if a reasonable substitute is available, such as the kind of substitutes that Judge Davis has suggested. It is, you know, so, so no, not an actual right to come to cross-examination, but at least a reasonable substitute, therefore. In addition, I'm sorry, I've lost my train of thought, I was going to, I was going to say something. You asked, you know, would it vary from, from procedure to procedure, and due process does vary based on what interest is at play. Is it a permanent interest? Is it a, is it an interest that likely will impact an ability to find employment on down the, the road? Is it, is it temporary? Is it something that involves credibility assessments? All of those things go into the question of what makes an appropriate due process hearing. And so I think, again, though I think Wells is directly on point, I think all the more in a case like this, where you've simply got to make factual determinations, or you've got to make credibility assessments between an accused and accuser, that you've got to have some form, I would say, cross-examination directly of the witness, but certainly, as the First Circuit said, some form, some form of real-time cross-examination. Now the, the Ms. Pettit says that even if there is a due process right here, we haven't articulated it clearly in the past, and therefore the defendants are entitled to qualified immunity. What's your response to that? My response is, I think Wells is directly on exactly the kind of hearing that we had here. I do not think it is a requirement that it be a, a hearing, a sexual harassment hearing. I, I don't think that's required. They were, the Fifth Circuit in that case was determining what kind of hearing does this employee who has a due process right and a protected interest in his employment, what kind of hearing does he, is he entitled to? Well, let me just, since Wells, didn't we have some case that involved reductions in force in some university? I think it came out of the Dallas, the Northern District of Texas, and we had a rather lengthy opinion, and it said something about the standards for due process in these circumstances being murky, and I'm sorry I can't call the name right offhand, but it seems to me there is such a case. Well, I, I've certainly seen, seen cases that, that talk about the murky, the murkiness of a due process inquiry, and I think that's, I think that's true because of the, the different interests that might appear in each case, but that doesn't mean we don't have a platform, and I think Wells gives us the platform. Again, it was a administrative hearing, deprivation of unemployment interest, and the court clearly said that he was entitled to, to confront the witnesses against him. I'm out of time, if there's another question. I can't find that case, so I guess right off, offhand, so I guess there's no, I have no further questions. Anybody else? Okay, thank you very much. Thank you. Miss Pettit. Thank you, Judge Jones. I have a couple of points, but before I start, I believe the case you're referring to is Plummer, P-L-U-M-M-E-R. I'm including Plummer. Plummer is not the case. Okay, then. Confrontation, as you very well know, is not an issue in Plummer. Your honor. Anyway, so I, we, we heard a lot about Wells, and in Wells, I would respectfully suggest, does not hold that confrontation is required. In fact, Wells does not even require the defendant to be in the room. Instead, what Wells requires is that the witness, and I'm looking at page 683 of that opinion, that the defendant have notice of the witnesses against him and what they maintain before he meets their case, and one way to do that is confrontation, but confrontation was not required. In fact, a year earlier in the Leavitt case, which was a sexual harassment case, if I'm not mistaken, the court specifically found that the constitution, that a defendant who had not been allowed to confront his, to confront his accuser as allowed by a contractual right did not have a due process claim because the due process clause did not require confrontation. So whatever this meant by the reasonable substitute, it did not include confrontation. Also, your honor, my opposing counsel made a number of comments about any number of ways that the panel could have allowed Dr. Walsh to, to test her credibility. I think it's worth noting again that Dr. Walsh didn't actually object to the student's absence. He knew she wasn't coming and he said nothing. If he had, the panel might very well have had one of those particular options, but it didn't because he didn't say anything. And in a civil context, that waives any claim he has to confrontation. Yeah, it wouldn't have been futile. I mean, once they decided they wouldn't let the photographs in because the identity of the student would be divulged. I mean, wouldn't it be futile to bring the student in? Your honor, there were, the photographs had more than one student. And so there were different levels of, and there's a, there's a federal statute called FERPA, which is that 20 USC 1232 G, which gives protections to all witnesses. And so it's really hard to say what the different levels of what the panel would have done because he didn't ask, but because there were additional students, it's, you can't really extrapolate from one to another. And so that's clearly not persuasive because the other student was a male. I'm sorry, your honor. I'm not sure. It was a male and he furnished an affidavit in support of student number one or whoever she was. I mean, I don't understand student a professor allegedly hitting on a female student. Your honor, FERPA doesn't distinguish based on gender, but FERPA does. So there are actually two different, common sense on the facts here suggest nevermind. And it suggests what judge Davis said, if FERPA meant that they wouldn't even offer photos, then how could she have been called to testify? So the FERPA protects the photographs, but FERPA doesn't necessarily speak to the, to the witness coming to testify. The FERPA actually would have protected the professors as well because they were, they were witnesses, but they were called because judge, because judge, professor Walsh asked for it. He didn't ask for this student. And that actually distinguishes this case from a number of the six circuit cases that your honor brought up, including Delegate Cincinnati. So the, there was some, also some conversation about HIDAC and respectfully, I disagree with your honor about whether HIDAC required cross-examination. There was cross examination in that case, but the sixth circuit did not say it was required. And in fact, the department of education recently recognized the circuit split between HIDAC and the sixth of the protections that judge Davis suggested. And so as a result, we're just in a different world right now, but they did recognize that there was a circuit split. You don't just have to take my word on it. And then on the photographs, judge Englehart, the, there was no specific discussion of individual photographs, but judge professor Walsh was allowed to have expert testimony from an attorney who discussed those photographs at length at ROA 2047 to 52. So he was able to fully vet what he thought about those photographs, even if they weren't seen, but they were seen because you can see that in his letter to Dr. Williams. And as a result, his defenses were fully vetted and he had his due process and we request that you reverse and render. Okay. Well, thank you very much. We appreciate your timeliness on, on using up the time we've given you and the court will stand in recess.